**Ex parte Andy H. LACKEY.**

**No. A–12141.**

Criminal Court of Appeals of Oklahoma.

Jan. 12, 1955.

Willis R. Stark, Oklahoma City, for petitioner.

Mac Q. Williamson, Atty. Gen., James P. Garrett, Asst. Atty. Gen., for Dr. Felix Adams as Supt. of Eastern State Hospital, respondent.

JONES, Presiding Judge.

This is an original action instituted by Andy H. Lackey for the purpose of securing his release from confinement in the Eastern Oklahoma State Hospital for the Insane at Vinita.

The agreed facts are as follows:

1. Petitioner, age 26, was charged with the crime of first degree rape in the Justice of the Peace Court at McAlester on November 27, 1950.

2. On November 28, 1950, the county attorney of Pittsburg County filed a petition with the County Court of Pittsburg County asking that the said Andy H. Lackey be committed to a state hospital for the mentally ill for observation as to his mental condition.

3. On November 29, 1950, without any notice to the prisoner, Lackey, he not being present and no one being present appearing for him, the County Court of Pittsburg County made an order committing the said Andy H. Lackey to the Eastern Oklahoma State Hospital at Vinita for observation for a period not exceeding 60 days, it being provided in the order "that upon the expiration of said date he be returned to the custody of the sheriff of Pittsburg County to be dealt with in accordance with the facts as shown in the report of said hospital."

4. No report was made within 60 days but on March 26, 1951, the superintendent of the hospital wrote the following letter to the county attorney of Pittsburg County:

"On November 30, 1950, we received for observation and examination, Andy H. Lackey.

"For some reason I have overlooked advising you in reference to this man. We made a diagnosis of dementia prae-

cox-catatonic type, and feel that this man should be retained in the hospital.

"As we have only a temporary commitment on him, I would suggest that you have him returned to Pittsburg County and re-committed."

5. On March 28, 1951, after receiving the letter of March 26, 1951, from the superintendent of the hospital, the County Court of Pittsburg County entered an order "nunc pro tunc" in which it was recited that the said Andy H. Lackey had been diagnosed as a dementia praecox catatonic type and that it was necessary that he be retained in the hospital for care and treatment and it was ordered that he be held by the institution "until fully recovered or until further order of this court, and that this order take effect as of the date of the original order."

6. Petitioner has never been discharged from the Eastern Oklahoma State Hospital and is still being treated for mental illness.

7. Petitioner has never at any time appeared before the County Court of Pittsburg County and has never had any mental examination in Pittsburg County to determine whether he should be committed to an institution.

It is contended that the confinement of the petitioner was without due process of law in that he was given no notice of any hearing touching upon his mental competency and that no guardian ad litem was appointed to represent him at a hearing and that he was given no opportunity to appear and defend himself either personally or by counsel.

The law under which the petitioner was committed to the hospital was adopted in 1949 and appears as Tit. 43A O.S. 1951 § 24, and reads:

"If any person is held in confinement because of criminal charges, or if he has criminal charges pending or likely to be filed against him, or if he has been taken into custody because of a criminal act or acts, and the question arises as to his sanity or state of men-

tal health, such individual may be ordered into a state hospital within the department for observation."

This statute as amended in 1953, 43A O.S. Supp. § 60, is identical to the 1949 law except that it places a limitation of 90 days upon the time which an individual may be detained in a state hospital for observation as to his mental condition. The 1953 statute was before this court for consideration in the case of Ex parte Lutker, Okl.Cr., 274 P.2d 786, 787. It was therein held:

1. " 'Due process of law' as used in the Oklahoma Constitution, Art. 2, § 7, is intended to protect the citizen against arbitrary action, and to secure to all persons equal and impartial justice.

2. " 'Due process of law' as to procedure means notice and an opportunity to defend in an orderly proceeding adapted to the nature of the case before a competent and impartial tribunal having jurisdiction of the cause. * *

3. "The provisions of the Mental Health Law, Tit. 43A O.S.Supp.1953 § 60, providing for the commitment of a person whose sanity may be questioned to an institution for temporary observation, by necessary implication, provides for a hearing with the accused being given notice and an opportunity to be heard, and such statute is constitutional as against the claim that it denies an individual his liberty without due process of law.

"Where district court commits accused to mental hospital upon oral motion of County Attorney stating that his sanity was in question and no notice is given to the accused and no opportunity to be heard, the order of commitment will be vacated and the accused remanded to the custody of the sheriff because said commitment was not in accordance with due process of law. * * *

"Order made committing accused to mental hospital for observation is interlocutory and no appeal will lie. If accused feels commitment is not in accordance with law, his remedy is by habeas corpus."

It is apparent from the agreed facts that the confinement of petitioner was without due process of law. Dr. Adams as head of the mental hospital recognized that there had been no lawful commitment of the petitioner to the institution as a patient for treatment when he wrote the letter of March 26, 1951, calling the attention of the county attorney to the fact that Lackey should be returned to Pittsburg County and properly committed to the institution for treatment.

██ It is apparent from the petition which was filed seeking the commitment of Lackey to a hospital for observation of his mental condition that the county attorney and the court both literally construed the statute the same as was done by the county attorney and the trial court in the Lutker case. There was no attempt to follow the procedure outlined under the mental health law for commitment of the said Lackey to a hospital as a mental patient and the purported order nunc pro tunc entered by the court after receiving the letter from the head of the mental institution cannot cure the defects in the proceedings leading up to the commitment of the prisoner.

██ In the response of the superintendent of the hospital it was stated that the petitioner is mentally ill at this time and that it would be dangerous to the patient and to the public for him to be discharged from the hospital. In Ex parte Lutker, supra; Ex parte Schaeffer, 177 Okl. 464, 60 P.2d 1037; Ex parte Smith, 150 Okl. 98, 300 P. 635, the commitment of the inmate to the mental hospital was vacated but the inmate was not set at liberty but was remanded to the custody of the sheriff from the county where the commitment had been entered for proper proceedings to be instituted and we feel that that is the proper order that should be made in this case.

Counsel for the petitioner refused to concede that petitioner was mentally ill at this time but contended that petitioner wanted to contest that issue before the proper court.

It is therefore ordered that the writ of habeas corpus do issue and that the petitioner Andy H. Lackey be discharged from the Eastern State Hospital, but the superintendent of the hospital is directed to deliver him to the custody of the sheriff of Pittsburg County who shall immediately transport him to the county jail of Pittsburg County and that he be therein detained pending the institution of a proper action and proceedings to determine whether he should be committed as a mental patient for treatment under the mental health laws of this state.

BRETT and POWELL, JJ., concur.